UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

-vs-

No. 2:22-cr-53-SPC-NPM
SHERI POLSTER CHAPPELL
U.S. District Court Judge

RICHARD BRILLHART

_____

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE RELATED TO CYBERTIPLINE REPORTS TO NCMEC;
MEMORANDUM OF POINTS AND AUTHORITIES**

COMES NOW, **RICHARD BRILLHART**, ("Defendant" or "Mr. Brillhart"), by and through the undersigned counsel, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourteenth Amendment of the United States, and hereby moves this Honorable Court for a pre-trial hearing to be conducted, and ultimately, to enter Order suppressing evidence from trial, including the following:

1. Any and all files, materials, and contents obtained from Google and Yahoo! email accounts.

2. Any and all contents from phones, notebooks, and cds, unlawfully obtained under the exclusionary rule/fruit of the poisonous tree doctrine.

3. Any and all other evidence the Court finds unlawfully obtained and the fruits thereof.

BACKGROUND

This motion is made pursuant to Local Rule 3.10 and Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure on the ground that the numerous searches and

seizures involved in this case, and listed *infra*, violated the Defendant's rights under the Fourth Amendment to the United States Constitution.

This motion is based on the attached points and authorities, the testimony of any witnesses at hearing, the files and records in this action, and any further evidence or argument that the Court may properly receive at or before hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

This case involves CyberTipline communications sent to the National Center for Missing and Exploited Children ("NCMEC") without their contents first being confirmed by any individual for the email provider.[1]

Instead of complying with State and Federal law regarding seeking a warrant and allowing the judicial branch to exercise its constitutional duties in determining whether or not probable cause was present, and whether or not to issue a search warrant; law enforcement officers then usurped the judiciary's role, and proceeded to view the seized files.

The searches and seizures were in violation of the constitution's warrant requirement and no exception to the warrant requirement is present.

---

[1] Defendant has attempted to obtain the names of any individuals at Yahoo! or Google who may have reviewed the files prior to their submissions to NCMEC. Defendant has a good faith belief that neither of the two email providers, Yahoo! or Google, had any individual review the content of the files prior to forwarding them to NCMEC based upon: (i) the lack of Yahoo!'s response to a lack to Defendant's served non-party subpoena which requested production of materials evidencing the name(s) of the Yahoo! employees who reviewed the files prior to submitting them to NCMEC (Please see **attached as Exhibit 1**) and (ii) that the purported custodian for Google, Oath Holdings, Inc. was not located at the address referenced throughout the Government's discovery when Defendant attempted to serve Google (Please see **attached as Exhibit 2**), along with, the language in the NCMEC report indicating that at least some of the files were not reviewed prior to sending.

In the present case, all evidence was unlawfully obtained and should be suppressed. Likewise, the fruits of those unlawful searches should be suppressed under the exclusionary rule.

Defendant is charged in a two-count indictment: (1) that alleges that on *May 10, 2021*, Defendant distributed, and attempt to distribute a visual depiction involving sexual exploitation of minors; and (2) that alleges from *April 14, 2021 to September 8, 2021*, Defendant possessed with intent to view a visual depiction involving sexual exploitation of minors.

## STATEMENT OF FACTS

This section will be divided into separate subsections and will address: (1) the Google disclosures to NCMEC, (2) the Yahoo! disclosures to NCMEC; and (3) the subsequent search warrants based upon the unconstitutional disclosures.

### The Google Disclosures to NCMEC

Upon information and belief, on May 10, 2021, Google provided a tip to the National Center for Missing and Exploited Children ("NCMEC") of two possible incidents of possession, manufacture and/or distribution of child sexual abuse material. See Soleil Randall Affidavit in support of Google Search Warrant attached herein and **marked as Composite Exhibit A.** (at GOV-00011, at para. 20(a)).

Upon information and belief, the source being the discovery provided by the government, Google sent the two uploaded gifs of alleged child sexual exploitative to NEMEC. See CyberTipline Report 90034851, attached herein and **marked as**

**Composite Exhibit B.** (at GOV-00381). At this point, there were no Court issued warrants for review of the forwarded materials.

Upon information and belief, on May 19, 2021, NCMEC received information and files from Google through the CyberTipline. Google provided one video file of alleged child sexual exploitative material allegedly attributed to a T-Mobile USA phone. **See Composite Exhibit B.**

Upon information and belief, on May 25, 2021, NCMEC received information and files from Google through the CyberTipline. Google provided one video file of alleged child sexual exploitative material allegedly attributed to a T-Mobile USA phone. **See Composite Exhibit B.**

Upon information and belief, Google never actually had an individual review some of the files of the alleged child sexual exploitative material before sending the images to NCMEC. **See Composite Exhibit B at GOV-00389 ("Did the Reporting ESP view entire contents of uploaded file? No.").**[2]

The uploaded Google files were provided to the government by NCMEC, and later assigned to the Department of Homeland Security Officer Soleil Randall.

---

[2] Defendant attempted to obtain from Google information as to who at Google had viewed that other files prior to the sending of those files to NCMEC through a non-party subpoena directed to the address listed in discovery. That Non-party subpoena details that the process server went to the address and that the address was an empty building.

Agent Randall reviewed the tip and the four uploaded images and/or videos and found that at least one of the images and/or videos was child sexual exploitive material.

Based upon the discovery provided by the government, Agent Randall submitted a subpoena to Google, LLC., for information contained in Google Accounts: reb3280@gmail.com (Email account #1); reb3280e@gmail.com (Email account #2); and luvemyng04@gmail.com (Email account #3).

The Government then proceeded to use Google's responses to the subpoena to obtain a search warrant, and to obtain the illicit materials attributed to the Google accounts that are related to the charges in the present case.

### The Yahoo Disclosures to NCMEC

Upon information and belief, on April 15, 2021, Yahoo! provided a tip to the National Center for Missing and Exploited Children ("NCMEC") of possible possession, manufacture and/or distribution of child sexual abuse material. **See CyberTipline Report 89005640**, attached herein and **marked as Composite Exhibit C** (at GOV-00127). CyberTipline Report 89005640 does not identify any individual from Yahoo! that viewed the files related to this report.

According to this report, NCMEC received information and files from Yahoo! through the CyberTipline. Yahoo! provided six (five of these files were allegedly identical) files of alleged child sexual exploitative material allegedly attributed to a T-Mobile USA phone. See **Soleil Randall Affidavit in support of Yahoo! Search**

**Warrant** attached herein and **marked as Composite Exhibit D.** at GOV-00069 through GOV-00070, at para. 21

Upon information and belief, on April 23, 2021, Yahoo! provided a supplemental tip to the NCMEC of possible possession, manufacture and/or distribution of child sexual abuse material. **See CyberTipline Report 89347533**, attached herein and **marked as Composite Exhibit E (GOV-00352-00366).** CyberTipline Report 89347533 does not identify any individual from Yahoo! that viewed the files related to this report.

Upon information and belief, on May 12, 2021, Yahoo! provided a supplemental tip to the NCMEC of possible possession, manufacture and/or distribution of child sexual abuse material. See **CyberTipline Report 90109206**, **attached herein** and marked **as Composite Exhibit F** (GOV-00415 – GOV-00493). CyberTipline Report 90109206 does not identify any individual from Yahoo! that viewed the files related to this report.

According to this report, NCMEC received information and files from Yahoo! through the CyberTipline. Yahoo! provided 217 files of alleged child sexual exploitative material allegedly attributed to a T-Mobile USA phone.

Upon information and belief, on May 17, 2021, Yahoo! provided a supplemental tip to the NCMEC of possible possession, manufacture and/or distribution of child sexual abuse material. **See CyberTipline Report 90418734**, **attached** herein and marked **as Composite Exhibit G** (GOV-00397 – GOV-00412).

CyberTipline Report 90418734 does not identify any individual from Yahoo! that viewed the files related to this report.

According to this report, NCMEC received information and files from Yahoo! through the CyberTipline. Yahoo! provided 10 video files of alleged child sexual exploitative material allegedly attributed to a T-Mobile USA phone.

Upon information and belief, on May 19, 2021, Yahoo! provided a supplemental tip to the NCMEC of possible possession, manufacture and/or distribution of child sexual abuse material. **See CyberTipline Report 90572327**, **attached** herein and marked **as Composite Exhibit H** (GOV-00367 – GOV-00380). CyberTipline Report 90572327 does not identify any individual from Yahoo! that viewed the files related to this report.

According to this report, NCMEC received information and files from Yahoo! through the CyberTipline. Yahoo! provided 8 files of alleged child sexual exploitative material allegedly attributed to a T-Mobile USA phone.

Upon information and belief, on May 25, 2021, Yahoo! provided a supplemental tip to the NCMEC of possible possession, manufacture and/or distribution of child sexual abuse material. **See CyberTipline Report 91186992**, **attached** herein and marked **as Composite Exhibit I** (GOV-00367 – GOV-00380). CyberTipline Report 91186922 does not identify any individual from Yahoo! that viewed the files related to this report.

Upon information and belief, all of the discovery provided to NCMEC, was later assigned to the Department of Homeland Security and Agent Soleil Randall.

The ESP, Yahoo!, although declaring that it had reviewed the files, did not provide any name for any employee whom had actually viewed the files at issue. Upon information and belief, Yahoo! never actually had an individual review the above referenced files/images of the alleged child sexual exploitative material before sending the information to NCMEC.

As such, NCMEC, Department of Homeland Security, and State law enforcement searched the files without a warrant and with no applicable exceptions to the warrant requirement.

### The Subsequent Search Warrants and Seizures

Upon information and belief, the subsequent search warrants were obtained based upon the 4th Amendment violations listed *supra*. Based upon that information, law enforcement subsequently relied upon the aforementioned information that it obtained from Google and Yahoo! to submit and obtain an application for a search warrant for 5446 10th Ave., Fort Myers, Florida 33907 and for a 2004 Cadillac automobile with a license plate of QDT F66. The search warrant was issued on September 1, 2021 that was good through September 15, 2021.

The search warrant was issued for both the residence at 5446 10th Ave., and the 2004 Cadillac. It was executed on September 8, 2021. During the execution of warrant for 5446 10th Ave, law enforcement seized into inventory the following: (i) a Black

Alcated Cell Phone; (ii) a Black Alcated Cell Phone; (iii) a Black Alcated Cell Phone; (iv) a Grey/Black ZTE Cell Phone IMEI; (v) a Black Alcated Cell Phone IMEI; (vi) Six DVDs; (vii) a Black Alcated Cell Phone IMEI; (viii) a Purple Notebook with Computer Log; (ix) a Black Samsung Cell Phone HEX; (x) Black ZTE Cell Phone; and (xi) Four DVDs.

Mr. Brillhart was subsequently indicted for two counts: Count one alleging that the Defendant knowingly distributing or attempting to distribute child sexual exploitative material in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) [18 U.S.C. § 2252(a)(2) and (b)(1)], and for Count two, alleging that Defendant knowingly possessed and attempt to possess, and access with intent to view, a child sexual exploitative material in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

## GROUNDS FOR SUPPRESSION

Law enforcement did not comply with the "private-search doctrine" because their search exceeded the scope of the search conducted by Google and Yahoo!. *See Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395 (1980); *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652 (1984); *United States v. Ackerman*, 831 F.3d 1292, 1306 (10th Cir. 2016). Specifically, Detectives viewed images or videos that were not reviewed by Yahoo! or Google. *See Walter* at 657; *See also United States v. Reddick*, 900 F.3d 636, 637-638 (5th Cir. 2018). As a result, the Government cannot rely on the "private-search doctrine" as an exception to the Fourth Amendment. *See id.*

## MEMORANDUM OF LAW

### A. MR. BRILLHART'S FOURTH AMENDMENT RIGHTS WERE VIOLATED BY THE ILLEGAL SEARCH OF HIS ELECTRONIC COMMUNICATIONS.

#### The Legal Standard

The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. Amend. IV.

"[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, **are *per se* unreasonable under the Fourth Amendment**—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (emphasis added).

The burden of establishing the basis for a warrant-less search always rests with the government. *See United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

In *Johnson*, the Supreme Court made clear, "[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. **Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged**

by the officer engaged in the often-competitive enterprise of ferreting out crime."

*Johnson v. United States*, 333 U.S. 10, 13-14 (1948) (emphasis added).

### I. There was no search warrant issued at the time that Law Enforcement first viewed the files at issue.

In the present case, the Government did not obtain a warrant prior to viewing the aforementioned Yahoo! email accounts and Google email accounts. Therefore, the Government has the burden of proving an exception to the warrant requirement. See *Freire,* 710 F.2d at 1519. In the present case, no exception is applicable.

### II. NCMEC qualifies as a governmental entity

"That an entity might be incorporated, as NCMEC is, doesn't prevent it from also qualifying as a governmental entity: the dispositive question isn't one of form but function, turning on what the entity does, not how it is organized." *United States v. Ackerman*, 831 F. 3d 1292, 1295 (10th Cir 2016).

In *Ackerman*, future Supreme Court Justice Gorsuch authored an opinion finding that NCMEC qualified as a government entity.

> NCMEC's law enforcement powers extend well beyond those enjoyed by private citizens — and in this way it seems to mark it as a fair candidate for a governmental entity. NCMEC's two primary authorizing statutes — 18 U.S.C. § 2258A and 42 U.S.C. § 5773(b) — mandate its collaboration with federal (as well as state and local) law enforcement in over a dozen different ways, many of which involve duties and powers conferred on and enjoyed by NCMEC but no other private person.
>
> NCMEC is statutorily obliged to operate the official national clearinghouse for information about missing and exploited children, to help law enforcement locate and recover missing and exploited children, to "provide forensic technical assistance ... to law enforcement" to help

> identify victims of child exploitation, to track and identify patterns of attempted child abductions for law enforcement purposes, to "provide training... to law enforcement agencies in identifying and locating non-compliant sex offenders," and of course to operate the CyberTipline as a means of combating Internet child sexual exploitation. 42 U.S.C. § 5773(b).
>
> Responsibilities and rights Congress has extended to NCMEC alone "under Federal law" and done so specifically "to assist or support law enforcement agencies in administration of criminal justice functions." Id. § 16961(a)(1).
>
> This special relationship runs both ways, too, for NCMEC is also empowered to call on various federal agencies for unique forms of assistance in aid of its statutory functions. See 18 U.S.C. § 3056(f) (authorizing the U.S. Secret Service to provide, "at the request of" NCMEC, "forensic and investigative assistance in support of any investigation involving missing or exploited children").

Id at 1296. The Court in *Ackerman*, went on to address NCMEC's "CyberTipline,"

> NCMEC's CyberTipline functions, the functions at issue in this case, illustrates and confirms the special law enforcement duties and powers it enjoys.
>
> First, NCMEC and NCMEC alone is statutorily obliged to maintain an electronic tipline for ISPs to use to report possible Internet child sexual exploitation violations to the government. Under the statutory scheme, NCMEC is obliged to forward every single report it receives to federal law enforcement agencies and it may make its reports available to state and local law enforcement as well. See id. § 2258A(c).
>
> Second, ISPs must report any known child pornography violations to NCMEC. Not to any other governmental agency, but again to NCMEC and NCMEC alone. ISPs who fail to comply with this obligation face substantial (and apparently criminal) penalties payable to the federal government. Id. § 2258A(a)(1), (e); see also Child Exploitation & Obscenity Section, Frequently Asked Questions (FAQs), U.S. Dep't Just., https://www.justice.gov/ criminal-ceos/frequently-asked-questions-faqs (last visited July 7, 2016) ("If the ISP knowingly and willfully fails to report the 1297*1297 apparent violation, it is subject to criminal penalties.").
>
> Third, when NCMEC confirms it has received a report the ISP must treat that confirmation as a request to preserve evidence issued by the

government itself. Compare 18 U.S.C. § 2258A(h)(1) ("[T]he notification to an [ISP] ... by the CyberTipline of receipt of a report ... shall be treated as a request to preserve, as if such request was made pursuant to section 2703(f)."), with id. § 2703(f)(1) ("A[n ISP]..., upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession...."). Failure to comply again opens an ISP to potential civil or criminal sanctions. See id. § 2258B.

Fourth, in aid of its tipline functions NCMEC is statutorily authorized to receive contraband (child pornography) knowingly and to review its contents intentionally. Id. § 2258A(a), (b)(4); NCMEC Amicus Br. at 20-21. Actions that would normally subject private persons to criminal prosecution. See 18 U.S.C. § 2252A(a)(2) (knowing receipt or distribution); id. § 2252A(a)(5)(B) (knowing possession or access with intent to view) [...]

As such, in the present case, when NCMEC reviewed the files at issue it did so as a government entity.

### III. *The Private Search Doctrine Inapplicable*

In addition, the Private Search doctrine is inapplicable. Under the private search doctrine, Courts have provided that the Fourth Amendment provides protection to citizens from government actors, not private ones.

A private party thus may conduct a search that would be unconstitutional if done by the government. "From this principle comes the private search doctrine." *United States v. Montijo*, No. 2: 21-cr-75-SPC-NPM (M.D. Fla. Jan. 10, 2022).

Under the private search doctrine, the Fourth Amendment allows police to replicate a prior private search *provided it stays within the same parameters. See United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015).

The private search doctrine has become defined in two U.S. Supreme Court cases: *Walter* and *Jacobsen*. *Walter* and *Jacobsen* are the formative cases on the private search doctrine.

In *Walter*, the Supreme Court's plurality opinion concluded the agents exceeded the scope of the private search because they had to view the films—when no employee had done so—to know whether the defendants committed any crime:

> It is perfectly obvious that the agents' reason for viewing the films was to determine whether their owner was guilty of a federal offense. To be sure, the labels on the film boxes gave them probable cause to believe that the films were obscene and that their shipment in interstate commerce had offended the federal criminal code. But the labels were not sufficient to support a conviction and were not mentioned in the indictment. Further investigation— that is to say, a search of the contents of the films— was necessary in order to obtain the evidence which was to be used at trial.
>
> [. . .]
>
> Prior to the Government screening [of the films] one could only draw inferences about what was on the films. The projection of the films was a significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search.

447 U.S. at 654, 657 (footnote omitted).

In *Jacobsen*, 466 U.S. 109 (1984), Federal Express employees opened a damaged package to find zip-lock bags that contained a white powder. Rather than opening the bag with the powder, the employees called the DEA. The agents responded and removed the tube from the box, removed the plastic bags from the tube, opened each bag, removed some powder, and fielded tested it to confirm it was cocaine.

In *Jacobsen*, the Supreme Court addressed whether the private search doctrine saved the warrantless search. The Court's consideration was twofold:

(1) how much the agents' actions led to them learning new information the employees did not uncover; and
(2) how far the agents' investigation intruded on the package owner's privacy interest beyond the employees' intrusion.

The *Jacobsen* Court found the employees infringed on the owner's expectation of privacy when they opened the package and invited the agents to examine the contents. *Id.* at 121.

Defendant sent non-party subpoenas to the representatives for Google and Yahoo! which requested that they provide Defendant with the names of the individuals who viewed the files that initiated the disclosures to NCMEC.

As of the date of this Motion, neither Google or Yahoo! have been able to provide who personally viewed the files at issue. Therefore, the subsequent searches were in violation of the Fourth Amendment.

B. <u>SUPPRESSION OF THE MATERIALS UNLAWFULLY OBTAINED THROUGH THE EXECUTION OF THE SUBSEQUENT SEARCH WARRANT CONSTITUTE FRUITS OF THE POISONOUS TREE</u>

The Fruit of the Poisonous Tree Doctrine, also known as, the exclusionary rule, provides that evidence subject to suppression as a result of Fourth (search and seizure), Fifth (self-incrimination), or Sixth (right to assistance of counsel) Amendment violations include not only what was seized or discovered in the course of the unlawful conduct, but anything that was subsequently obtained as a product of the illegal action.

*See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920).

In the present case, but for the illegal searches of Google and Yahoo!, on behalf of the Government, of the Gmail and Yahoo! email accounts, there would not have been sufficient evidence to acquire a valid search warrant. As such, all of the files, computers, phones, and other items seized during the execution of the subsequent search warrants should be suppressed from evidence at trial.

## CONCLUSION

Based on the aforementioned facts and case law, suppression from evidence of all the items obtained through unconstitutional searches and seizures is proper.

WHEREFORE, Defendant respectfully requests that this Honorable Court enter an order suppressing from evidence at trial all items and information obtained during the execution of each of the search warrants, including: (1) All files, materials, and contents obtained from the Google and Yahoo! email accounts, (2) All contents from phones, notebooks, and cds, unlawfully obtained under the exclusionary rule/fruit of the poisonous tree doctrine, (3) All other evidence the Court finds unlawfully obtained and the fruits thereof.

Dated: 1/13/23

Respectfully submitted by,

/SS/ JOSEPH DAVIDOW
JOSEPH A. DAVIDOW
Attorney for Defendant
Florida Bar No. 65885
WILLIS & DAVIDOW, L.L.C.
9015 Strada Stell Court #106
Naples, Florida 34109
(239) 465-0531
jdavidow@willisdavidow.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of January 13, 2022, a true copy was electronically filed and will be sent electronically through CM/ECF to Yolande G. Viacava, Assistant United States Attorney.

/SS/ JOSEPH DAVIDOW
JOSEPH A. DAVIDOW
Attorney for Defendant
Florida Bar No. 65885
WILLIS & DAVIDOW, L.L.C.
9015 Strada Stell Court #106
Naples, Florida 34109
(239) 465-0531
jdavidow@willisdavidow.com